HONORABLE RONALD B. LEIGHTON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

WILLIAM SCHEIDLER,

                Plaintiff,

      v.

JAMES AVERY, *et al.*,

                Defendants.

CASE NO. C12-5996 RBL

ORDER

[Dkt. #s 68, 76, 77, 79 & 100]

THIS MATTER is before the Court on five Motions:

1.  Plaintiff Scheidler's Motion to Amend his Complaint for a third time, by replacing the 34 page "RICO statement" appended to his Second Amended Complaint [Dkt. #58-11] with a new, 129 page RICO statement.  [Dkt. #68]

2.  Defendants Washington State Board of Tax Appeals (and its chair, Slonum's) Motion to Dismiss.  [Dkt. #76]

3.  County Defendants Avery, George, Haberly and Miles's Motion to Dismiss.  [Dkt. #77]

4.  Defendants Washington State Bar Association (and associates Congalton and Mosner's) Motion to Dismiss. [Dkt. #79] and

5. Clerk of the Court Defendants Carlson and Ponzoha's Motion to Dismiss.  [Dkt. #100]

**A.  Procedural History.**

Scheidler claims that he is a retired, disabled person eligible for a property tax exemption[1] under Chapter 84.36 RCW.  That statute permits such relief in some cases, depending in part on the applicant's "disposable income"—which is his Adjusted Gross Income *plus* additional amounts listed in RCW 84.36.383(5).  Generally, those with disposable incomes greater than $35,000 are not eligible for an exemption:

> A person who otherwise qualifies under this section and has a combined ***disposable income of thirty-five thousand dollars or less*** but greater than thirty thousand dollars ***is exempt*** from all regular property taxes on the greater of fifty thousand dollars or thirty-five percent of the valuation of his or her residence, but not to exceed seventy thousand dollars of the valuation of his or her residence[.]

RCW 84.36.381(b)(i) (emphasis added).

Scheidler sued Assessor Avery in Kitsap County Superior Court in 2008, complaining that the Assessor's calculation of "disposable income" in connection with such exemptions was inconsistent with Washington law.  [*See* Dkt. #1-2 at 5]  Defendant attorney Miles represented

---

[1] The early part of this history is taken from Scheidler's original complaint [Dkt. #1-2] and the exhibits to it.  Scheidler's subsequent filings admit he has been chasing this white whale since at least 1998.  *See* Dkt. #58 at 9, 13, blaming "17 years" of "cascading unfortunate events" on the prior Kitsap County Assessor's failure to grant the property tax exemption he apparently sought at that time.

Scheidler also blames Scott Ellerby, an attorney who represented him in those earlier proceedings. *Id.* "This case and every event touching this case, has its beginning in the misrepresentations of Scott Ellerby, WSBA # 16277, and the lies he told[.]"  [Dkt. # 89 at 11] Scheidler filed a bar complaint against Ellerby, which was dismissed.

In 2009, Scheidler sued Ellerby over his 1998 representation, and lost.  Scheidler appealed, and Judge Hartman's dismissal of his claims on summary judgment was affirmed. *Scheidler v. Ellerby*, 2012 WL 2899730 [Dkt. # 102 at Ex. 1]  The players in the *Ellerby* lawsuit (Judge Hartman, Ellerby, and his attorney, Jeff Downer) all appear in Scheidler's second amended complaint in this case [Dkt. #58], as well as his proposed amended RICO statement [Dkt. #68].

Defendant Assessor Avery, and in January 2009, Defendant Judge Haberly dismissed Scheidler's complaint on Miles's Motion.  Scheidler appealed, and in May, 2010, the Court of Appeals affirmed.  It held that there was no justiciable controversy, because Scheidler had not yet actually applied for a property tax exemption.  *See Scheidler v. Kitsap County Assessor*, 2010 WL 1972780[2].

In June, 2010, Scheidler filed property tax exemption applications for the 2007, 2008, 2009 and 2010 tax years, based on his income in each prior year. [Dkt. #1-2 at 38-45].  He sent the forms under a June 10 cover letter to Assessor Avery, explaining that he was forced to sign the forms "UNDER DURESS." [Dkt. #1-2 at 47]   He continued to claim that Kitsap County's instructions for filling out the forms were contrary to the law (and an invasion of privacy), because they did not permit him to count some losses in determining his disposable income.

Scheidler claimed that his disposable income[3] in each relevant year was under the $35,000 limit:

YEAR    Disposable Income
2006……$27,163
2007……$-136,045 less medical insurance payments and payments for medication
2008……$28,703                    "
2009……$21,300                    "

_____

[2] Scheidler's complaints all reference, discuss, and rely on his various prior lawsuits and their allegedly fraudulent, criminal and otherwise unlawful resolution.  But not all of the referenced orders or opinions are included in his exhibits.  The court takes judicial notice of the actual outcomes where they are available.

[3] William Scheidler alone is the *pro se* plaintiff, but the tax exemption applications that triggered this litigation were also filed on behalf of his wife, Mary.

1   [Dkt. 1-2 at 48]  Scheidler attached a "Combined Disposable Income Worksheet" for each year.

2   These worksheets showed that in 2006, Scheidler's "Total Combined Disposable Income Less

3   Allowable Deductions" was $112,457.  [Dkt. #1-2 at 39]   For 2007, it was $75,190; for 2008,

4   $51,495; and for 2009, $23,539. [*See* Dkt. #1-2 at 41, 43, and 45]

5          Avery denied Scheidler's exemption applications for 2007-2009, but agreed that he was

6   at least partially exempt for 2010.   In September, 2010, Scheidler appealed all four

7   determinations to the Board of Equalization, by filing form "Taxpayer Petitions to the Kitsap

8   County Board of Equalization for Review of Senior Citizen/Disabled Person Exemption or

9   Deferral Determination" for 2006, 2007, 2008 and 2009.  [*See* Dkt. #1-2 at 33 to 36].  Scheidler

10  claimed that his applications were "fraud" because they misstate the law. [Dkt. #1-2 at 6]

11         Scheidler's BOE appeal was denied, and he appealed to the Washington State Board of

12  Tax Appeals[4].  On September 6, 2012, the Chair of the Board (Defendant Slonum) issued an

13  Order Granting the Assessor's (Defendant Avery's) Motion for Summary Judgment, dismissing

14  the four appeals. [Dkt. #1-2 at 52-55].  Slonum explained that BoTA did not have jurisdiction

15  over Scheidler's "various[5] Causes of Action," and that it could address only Scheidler's appeal

16  of his eligibility for the property tax exemptions.  Slonum recognized that Scheidler disagreed

17  with the disposable income calculation, but described his interpretation as "erroneous."  Instead,

18  she held that the Assessor's computations of Scheidler's disposable income were correct, and

19  that there were no questions of fact in light of Scheidler's income tax returns:

20  _____

21       [4] Scheidler's original complaint "incorporates by reference" the "record on review in
    BoTA #11-507-510" [Dkt. #1-2 at 6], but only portions of that record are attached to his
22  pleadings.  Indeed, most of the Exhibits listed in Dkt. #1-2 are not attached to the complaint on
    the Court's electronic (CM/ECF) docket: A-1, A-5, parts of A-6, A-7 to A-27, and A31-A33 are
23  not included.

24       [5] Scheidler sought declaratory relief and a jury trial from the BoTA.  [Dkt. #1-2 at 6]

ORDER - 4

The plain language of RCW 84.36.383(5) and this Board's many interpretations of the statutory term make it clear that the Respondent is entitled to summary judgment on all four appeals. The Appellants were approved for the maximum possible exemption for tax year 2010 (Docket No. 11-510), and the Board recently dismissed that appeal with prejudice. The Appellants' applications for tax years 2007, 2008, and 2009 (Docket Nos. 11-507 to 509) were correctly denied by the Respondent and the County Board because their combined disposable income for each of those years, as determined by the plain language of the exemption statute, exceeded the statutory maximum of $35,000.

[Dkt. #1-2 at 54].   Slonum denied the Assessor's request for Rule 11 sanctions, because (and only because) she did not have "the power of the superior court" to do so. *Id.*

Meanwhile, Scheidler filed a bar complaint against Miles, "based on his inconsistent legal arguments." Defendant WSBA dismissed the grievance. [Dkt. #1-2 at 7]

After the BoTA decision, Scheidler sought relief from Judge Haberly in the already-affirmed and -closed *Scheidler v. Kitsap County Assessor* (08-2-02882-0) case. Those efforts were denied, and Judge Haberly forced Scheidler to pay the Assessor's costs. [Dkt. #1-2 at 7; *citing* Exhibit A-30 thereto (which is not the cited Order).] Judge Haberly denied Scheidler's Motion for Reconsideration on September 21, 2012. [Dkt #1-2 at 57]

Two weeks later, Scheidler filed a lawsuit in Kitsap County against the four primary characters who had recently advocated or decided against him: James Avery (the Kitsap County Assessor), Alan Miles (Avery's attorney, a Kitsap County Deputy Prosecutor), Karlynn Haberly (the Kitsap County Superior Court Judge) and Kay Slonum (the Board of Tax Appeals Chair). He broadly claimed that each had violated a long list of criminal statutes, engaged in fraud, and

1  generally[6] infringed his constitutional rights. [Dkt. #1-2]  Before he served his complaint,

2  Scheidler filed an amended complaint [Dkt. # 1-3], though it is clear that he intended the

3  amendment to supplement, rather than replace, the original. [*See* Dkt. # 1-3 at 2]  Scheidler

4  served his amended complaint, and the Defendants timely removed the case here.  [Dkt. #s 1-2,

5  1-3].

6          Scheidler moved for remand (and for disqualification of the attorneys who removed the

7  case on behalf of their clients) [Dkt. #9], and for disqualification of the court [Dkt. #11].  The

8  Defendants moved to dismiss.

9          This Court denied the motions to remand and to recuse.  It dismissed all of the claims

10  with prejudice, and without leave to amend, because the claims Scheidler asserted and the "facts"

11  they were based on were not viable or plausible as a matter of law—suing a superior court judge

12  for deciding against you has never been a viable claim in this Circuit (or anywhere else).  [*See*

13  Dkt. #38]

14          Scheidler appealed.  The Ninth Circuit affirmed the denial of Scheidler's motions to

15  remand and recuse, and affirmed the dismissal of all of Scheidler's previously-asserted claims.

16  But it held that the Court should have given Scheidler an opportunity to amend his complaint in

17  an attempt to assert a viable claim.  [Dkt. #51, *citing United States v. Corinthian Colleges*, 655

18  F.3d 984, 995 (9th Cir. 2011) ("Dismissal without leave to amend is improper unless it is clear,

19  upon de novo review, that the complaint could not be saved by any amendment. . . . Here, we can

20  conceive of additional facts that could, if formally alleged, support the claims that Corinthian

21  made false statements[.]")]

22  _____

23          [6] Slonum counted 28 claims against her in Scheidler's amended complaint, the majority
    of them alleging violations of criminal statutes.  [Dkt. #8 at 2-3]

24

1    The Ninth Circuit provided no guidance as to the facts or claims it conceived Scheidler

2    might plausibly assert against the Judge, the Assessor, his attorney, or the chair of the non-party

3    BoTA.  Nevertheless, it remanded the case to give Scheidler an opportunity to try, and to pursue

4    the BoTA appeal he "incorporated by reference" into his initial complaint.

5    In response[7], Scheidler filed a second amended[8] complaint.  It is 60 pages long, with

6    more than 200 pages of exhibits.   [Dkt. #58]  Scheidler repeats many conclusory allegations and

7    accusations about the original defendants' conduct, but he also adds seven new defendants and a

8    host of new claims, based on entirely new factual allegations.

9    Scheidler now alleges a massive RICO conspiracy:

10

11

12

13

14

15

16

17

18
_____

19    [7] Since remand, Scheidler has continued his efforts to disqualify this Court (and any other
with a connection to the WSBA.  Those efforts were consistently denied, but rather than seek an
interlocutory appeal, Scheidler filed a "Writ of Mandamus" in the Ninth Circuit, which is
20    apparently still pending.  [Dkt. # 114]  Such a filing does not deprive this Court of jurisdiction,
and the pending Motions are ready for decision.

21
[8] The Clerk Defendants point out that Scheidler did not seek or obtain leave of Court to
22    add new parties. [Dkt. #100]  Leave to amend in lieu of dismissal under Fed. R. Civ. P. 12(b)(6)
permits a plaintiff to cure deficiencies (usually factual) in his existing pleading; it is not an
23    invitation to assert different claims against new parties arising out of wholly unrelated factual
allegations.

24

ORDER - 7

This action is precedent setting. It involves the highest levels of the WA Judicial System and the self-policing WA State Bar association, including the Supreme Court Judges and other Judges, Prosecutors, and Private Attorney at Law, all tied together through the WA State Bar Association and committing crimes with impunity against victims in various combinations of legal abuse schemes utilizing the courts and other agencies controlled by WA State Bar lawyers to aid and abet.

The racketeering conspiracy and anti-trust activity is witnessed and experienced first-hand by Plaintiff and countless other victims of this enterprise throughout the State of WA.  It is masterminded at the highest levels of WA State Bar association. Bar associates-in-fact, coming from various public and private domains, have created a RICO enterprise that now dominates and controls the WA State Bar's disciplinary functions, which in turn controls the market for attorneys in WA by taking attorneys out of the market who advocate 'unpopular' causes, which affect individuals, businesses and interstate commerce.

The extent of the Bar's criminal conduct includes, but is not limited to, insurance fraud through case fixing; kidnapping through case fixing under color of child protective services; human trafficking and even "murder by neglect" through case fixing under color of guardianships; Conspiracy; Extortion; and false imprisonment through case fixing.

[Dkt. #58 at 2] Scheidler also asserts:

- Section1983 claims for violations of "due process and conspiracy to interfere with civil rights" ($10,000,000 per defendant);

- Fraud claims (fraud, intrinsic fraud, and fraud upon the Court);

- Violations of state law criminal statutes regarding perjury, forgery and trading in public office;

- Violations of "criminal code and the anti-SLAPP statute (RCW 4.24.525)";

- Violations of criminal code Chapter 9.73 RCW ($3,000,000);

- Violations of the criminal profiteering statute (state RICO) (Chapter 9A.82 RCW) ($3,000,000);

1    • A ($3,000,000) damages claim under Chapter 7.56 RCW;

2    • Anti-trust violations under 15 U.S.C. §1 (the Sherman Act);

3    • Violations of the ADA ($1,000,000); and,

4    • An "Administrative Procedures Act" appeal under Chapter 34.05 RCW (what he

5    describes as the property tax appeal).

6    • Various injunctions, including the creation of a $1 billion fund to reimburse those, like

7    him, who have allegedly been forced to over-pay property taxes.

8    [Dkt. #58]  Each defendant seeks dismissal, and Scheidler seeks to amend his complaint to

9    include a more expansive RICO statement. [Dkt. #68]   In his responses to the defendants'

10   motions, Scheidler seeks yet another opportunity to amend his complaint, to correct what he

11   concedes might be "minor" "procedural" deficiencies.  [Dkt. # 89 at 3, 14; #108]

12   **B.  Fed. R. Civ. P.  12(b)(6) Standard.**

13       The adequacy of a pleading in the United States District Courts is governed by the

14   Federal Rules of Civil Procedure[9].  Dismissal under Fed R. Civ. P. 12(b)(6) may be based on

15   either the lack of a cognizable legal theory or the absence of sufficient facts alleged under a

16   cognizable legal theory.  *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

17   A plaintiff's complaint must allege facts to state a claim for relief that is **plausible on its face.**

18   *See Aschcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (emphasis added).  A claim has "facial

19   _____

20

21       [9] Scheidler argues that state law "pre-empts" the *Iqbal/Twombly* standard [Dkt. # 89 at 4],
     based on his reading of a Washington case holding that the federal standard does not apply to
     state court pleadings in state court cases under the Washington State Rules of Civil Procedure.

22   *See McCurry v. Chevy Chase Bank, FSB,* 169 Wn.2d 96, 102 (2010) ("The Supreme Court's
     plausibility standard is predicated on policy determinations specific to the federal trial courts.")

23

24       This is a federal trial court, and its jurisdiction is based on Scheidler's allegations of
     violations of myriad federal laws.  Scheidler's reading of *McCurry* is simply wrong.

plausibility" when the party seeking relief "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. Although the Court must accept as true the complaint's well-pled facts, conclusory allegations of law and unwarranted inferences will not defeat a Rule 12 motion. *Vazquez v. L. A. County*, 487 F.3d 1246, 1249 (9th Cir. 2007); *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001) (emphasis added). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than **labels and conclusions**, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations and footnotes omitted) (emphasis added). This requires a plaintiff to plead more than **"an unadorned, the-defendant-unlawfully-harmed-me-accusation**." *Iqbal*, 129 S. Ct. at 1949 (citing *Twombly*) (emphasis added).

On a 12(b)(6) motion, "a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Cook, Perkiss & Liehe v. N. Cal. Collection Serv.*, 911 F.2d 242, 247 (9th Cir. 1990) (emphasis added). However, where the facts are not in dispute, and the sole issue is whether there is liability as a matter of substantive law, the court may deny leave to amend. *Albrecht v. Lund*, 845 F.2d 193, 195–96 (9th Cir. 1988).

**C.  Scheidler has not stated (and cannot plausibly state) a claim against the County Defendants.**

Scheidler's second amended complaint does not meaningfully change the factual basis for his claims against the County Defendants: Assessor Avery; his attorney, Miles; and Judge Haberly, who dismissed Scheidler's 2008 case. Instead, it adds attorney Ione George, who represents these parties in *this* case. Scheidler alleges only that George removed the case, sought

1   its dismissal, and refused to agree with his remand efforts.  [*See* Dkt. #s 58, 77 at 4]  These facts

2   are not disputed.

3        In what can be recognized as a theme in Scheidler's submissions over time, he repeats his

4   conclusory claims that those disagreeing with him in any context violated various laws, oaths

5   and duties by refusing to agree with him.  George opposed him and was predictably named[10] in

6   the next iteration of his complaint.   This Court's dismissal of the prior claims (and its denial of

7   Scheidler's motion to remand) has already been affirmed by the Ninth Circuit.  These factual

8   allegations do not support any of Scheidler's numerous claims against George.

9        Stripped of the conclusory accusations, each of Scheidler's complaints contains very little

10   in the way of factual allegations related to any County Defendant.  Scheidler simply but

11   vehemently disagrees with the way the decision-makers (and their attorneys) read the property

12   tax exemption statute and its calculation of "disposable income" *vis a vis* capital losses.  From

13   this, Scheidler infers and alleges a vast and growing conspiracy to defraud anyone who is not a

14   WSBA member (or, as he alleges in his RICO statements, anyone who is a member but is an

15   "enemy" of the organization).

16        Scheidler fundamentally misapprehends the duties of attorneys generally, and of those

17   opposing him in this and prior cases.  He claims that the defendants have "**statutory obligations**

18   **to remedy Scheidler's pleadings**" [Dkt. # 89 at 2 (emphasis in original)], and he repeats that

19   lawyers have a "fiduciary duty" to "take the case of" and "rescue" the "oppressed."  [*Id*.]  Thus,

20   by labeling himself as "oppressed," he can unilaterally foist upon the defendants a fiduciary duty

21   to protect him from whatever evils he can imagine.  Scheidler claims elsewhere that the

22   _____

23     [10] If past is prologue, Scheidler's Response to the State Court Defendants' Motion
    suggests that their attorney will be his next target. [*See* Dkt. #108 at 2, 12 (claiming that

24   Liabraaten is "in violation of her code" and that "she must be disbarred.")].

ORDER - 11

defendants ***"must fix"*** any deficiencies in his complaint, and that the WSBA "delegated to Scheidler" the "TASK of documenting corruption of WSBA lawyers."  [Dkt. #89 at 15 (emphasis in original); Dkt. #108 at 5 (emphasis in original)]  These assertions do not accurately describe any attorney's duty.

Scheidler also claims that by removing the case, the original defendants and new defendant George engaged in unlawful "forum shopping," and that filing a Rule 12(b)(6) Motion to Dismiss is "on its face" a "limitation of  Scheidler's civil action," and "in that regard is back-door legalization of 'unauthorized or invalid acts' of government officials."  [Dkt. #89 at 7]  These claims are baseless, and there is no conceivable additional fact that can be pled to make them cognizable or plausible.

Scheidler's §1983 claims, based on alleged violations of the Washington Constitution (or other state laws), are not viable as a matter of law, and cannot be made plausible by the allegation of additional or different facts. *See Peters v Vinatieri*, 102 Wn. App. 641, 649 (2000), and other authority accurately summarized in Defendants' Motion to Dismiss [Dkt. # 77 at 5-6].

Similarly, Scheidler's claims that the County Defendants violated various criminal statutes are not cognizable under §1983 or any other vehicle, because none of those laws provide for a private right of action. *See Thompson v. Thompson*, 484 U.S. 174, 179 (1988); s*ee also Keenan v. McGrath,* 328 F.2d 610, 611 (1st Cir.1964) (only the U.S. Attorney can initiate criminal proceedings in federal court.)

Scheidler claims that the County Defendants violated the United States Constitution, but other than naming constitutional provisions, he does not (and cannot) articulate or plead facts that would plausibly support such a claim.  He does not address the various immunities that would preclude such claims.  Judge Haberly, for example, was and is absolutely judicially

1   immune from Scheidler's claims.  *See Lallas v. Skagit County*, 167 Wn.2d 861, 865 (2009).

2   Scheidler's constitutional claims against these defendants are nothing more than "unadorned,

3   the-defendant-unlawfully-harmed-me-accusations," and they are not viable as a matter of law.

4        Scheidler's new RICO and other claims are similarly, fatally defective.  Disagreeing with

5   a taxpayer's analysis of the applicability of a statutory property tax exemption—or representing

6   one who so disagrees—does not violate RICO, the Sherman Act, the ADA or any other federal

7   or state statute giving rise to personal liability[11] to the taxpayer.

8        The facts are not in dispute, and there is no potential liability as a matter of substantive

9   law.  Scheidler cannot conceivably plead additional facts to make these claims viable or

10  plausible.  The County Defendants' Motion to Dismiss [Dkt. #77] is GRANTED, and all of

11  Scheidler's claims against them are DISMISSED WITH PREJUDICE and WITHOUT LEAVE

12  TO AMEND.

13  **D.  Scheidler has not stated (and cannot plausibly state) a claim against the WSBA
        Defendants.**

14

15       Scheidler's second amended complaint adds the Washington State Bar Association and

16  two of its agents.  He claims the WSBA has a duty to ensure that its attorney members "protect

17  and maintain Scheidler's individual rights," and that it is a "RICO enterprise" with the "common

18  purpose of commandeering Washington's judicial branch," in order to protect "RICO

19  associations in fact," so as to "defraud and extort citizens of their money, rights and property."

20  [Dkt. #58 at 31]

21       Scheidler's primary factual support of this bold claim is a lengthy re-hashing of attorney

22  disciplinary proceedings to which he was not a party, and which have already been resolved,

23       [11] Properly pled and pursued, an appeal of an adverse BoTA decision does not seek
    damages from the Assessor, his attorney, or the administrative decision-maker; it instead seeks a
24  reversal of the property tax exemption *decision*.  Scheidler's tax appeal is discussed below.

1    coupled with conclusory accusations of dishonesty, corruption, criminal conduct, extortion,

2    perjury, ethical violations, and the like. [Dkt. #s 58, 68, 89]  His complaint appears to stem

3    primarily from the WSBA's failure to discipline attorneys against whom he has previously filed

4    grievances, and from his negative experiences with lawyers and courts generally.

5           Scheidler also sued Zachary Mosner (a WSBA "Conflicts Review Officer" volunteer,

6    who allegedly failed to investigate Scheidler's bar compliant against his prior attorney, Ellerby),

7    and—for the second time—Felice Congalton (a WSBA employee in the Office of Disciplinary

8    Counsel, who dismissed Scheidler's prior grievances against other attorneys).

9           The WSBA Defendants seek dismissal with prejudice and without leave to amend.  [Dkt.

10   #79]  They argue that Scheidler has no standing to complain about the results of his grievances

11   and that this court accordingly does not have subject matter jurisdiction over these claims.

12          Scheidler must establish standing:

13          The irreducible constitutional minimum of standing contains three elements.
            **First**, the plaintiff must have suffered an "injury in fact" – an invasion of a legally
14          protected interest which is (a) concrete and particularized, and (b) "actual or
            imminent, not 'conjectural' or 'hypothetical.'" **Second**, there must be a causal
15          connection between the injury and the conduct complained of—the injury has to
            be "fairly traceable to the challenged action of the defendant, and not the result of
16          the independent action of some third party not before the court."  **Third**, it must
            be "likely," as opposed to merely "speculative," that the injury will be "redressed
17          by a favorable decision." The party invoking federal jurisdiction bears the burden
            of establishing these elements.
18
19   *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (emphasis added).  He cannot meet this

20   burden.  Scheidler's complaint is not that the Bar did something to *him*, but that they failed to do

21   something to *someone else*—the lawyers against whom he filed grievances.  Like any other

22   private citizen, Scheidler does not have standing to force a prosecutor to prosecute a third party:

23          The Court's prior decisions consistently hold that a citizen lacks standing to
            contest the policies of the prosecuting authority when he himself is neither

24

prosecuted nor threatened with prosecution…. [A]private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another.

*See Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973); *see also Doyle v Oklahoma Bar Ass'n*, 998 F.2d 1559, 1567 (10th Cir. 1993) (private plaintiff has standing because he has no right to compel disciplinary proceeding; the only person who stands to suffer direct injury is the lawyer involved).   The WSBA cites numerous other cases for this same proposition. [Dkt. #79 at 8-9]

Scheidler's Response [Dkt. # 89] does not address his standing to sue under these authorities. He has not met his burden of establishing standing.

The WSBA defendants also argue that they are entitled to absolute quasi-judicial immunity—not just from damages, but from suit.  *See Mireles v. Waco*, 502 U.S. 9 (1991); *Hirsh v. Justices of the Supreme Court of Cal.*, 67 F.3d 708, 715 (9th Cir. 1995) (bar judges and prosecutors have quasi-judicial immunity); and cases discussed in the WSBA's Motion [Dkt. #79 at 10-12.]  Indeed, this issue was squarely and recently addressed in the case from which Scheidler's complaint appears to draw its inspiration[12]—*Scannell v. Washington State Bar Association*, Western District of Washington Cause No. C12 - 0693 SJO.  [*See* Order Granting Motion to Dismiss, Dkt. #94 in that case]

Scheidler argues that the Defendants' claimed immunity is "prohibited" under the Washington Constitution.  He claims that "any holding by any court granting privileges and immunities to defendants is void under WA common law RCW 4.04.010[.]"  [Dkt. # 89 at 6, *citing* Scheidler's second amended complaint, Dkt. #58].

---

[12] Scannell's disciplinary proceeding is discussed at length in Scheidler's RICO statement(s), and Scannell's subsequent (and since dismissed) RICO lawsuit bears a strong resemblance to Scheidler's proposed amended RICO statement.  [*Cf.* Dkt. #68 in this case *to* Dkt. #74 in Scannell's].  Scannell, unlike Scheidler, was a disciplined attorney and he at least partly sought to vindicate his own alleged injuries.  Nevertheless, his claim was dismissed and is on appeal.

1    This argument is not persuasive.  The WSBA defendants are entitled to absolute quasi-

2 judicial immunity as a matter of law.

3        The WSBA Defendants also argue that Scheidler's claims against them are barred by *res*

4 *judicata*, because his prior, similar Kitsap County lawsuit against Congalton was dismissed with

5 prejudice.  *See Scheidler v Callner*, Kitsap Superior Court Cause No. 14-2-00042-3 [Dkt. #79-1

6 (complaint) and #79-2 and -3 (orders dismissing Congalton and Callner, respectively)].

7 Scheidler did not appeal.

8        The doctrine of *res judicata* precludes re-litigation of claims that were raised in a prior

9 action, or which *could have been* raised in a prior action.  *W. Radio Servs. Co.  v. Glickman*, 123

10 F.3d 1189, 1192 (9th Cir. 1997) (emphasis added).  An action is barred by *res judicata* when an

11 earlier suit:  (1) involved the same claim or cause of action as the later suit; (2) involved the

12 same parties; and (3) reached a final judgment on the merits.  *Mpoyo v. Litton Electro-Optical*

13 *Sys.*, 430 F.3d 985, 987 (9th Cir. 2005).

14        Scheidler argues that the prior case is "VOID for fraud," and that there is no such thing as

15 *res judicata* in any event: "Res Judicata can never be claimed as only a "jury verdict" terminates

16 a case." [Dkt. # 89 at 12 (emphasis in original)]  These arguments are unsupportable and

17 frivolous.  He already sued Congalton for the very conduct he alleges against her here, and lost.

18 His attempt at a second, bigger bite at the apple is barred as a matter of law.

19        The WSBA's remaining arguments are similarly persuasive, and are to some extent

20 addressed in the discussion of the other defendants' motions.  Scheidler's §1983 claim is flawed

21 because the WSBA is not a "person," and his Sherman Act claim is barred by the state action

22 doctrine.  [*See* Dkt. #s 79 and 92]

23

24

1    The flaws in Scheidler's claims against the WSBA Defendants are substantive, not

2 procedural, and there is no conceivable set of facts that he could plead to make them plausible or

3 viable.  The WSBA Defendants' Motion to Dismiss [Dkt. #79] is GRANTED and Scheidler's

4 claims against them are DISMISSED WITH PREJUDICE and WITHOUT LEAVE TO

5 AMEND.

6 **E.  Scheidler has not stated (and cannot plausibly state) a claim against the Court Clerk
    Defendants.**

7    Scheidler's second amended complaint adds as new parties the Clerk of the Court of

8 Appeals (David Ponzoha) and the Clerk of the Supreme Court (Susan Carlson).  His complaint

9 against these parties is long on labels and conclusions, but short on facts.  He alleges that each

10 defendant refused to accept his proposed appellate pleadings in prior cases, and that his appeals

11 were dismissed as a result:

12   162.  Circa 8-15-2011 re case #857164. CJC grievance filed circa 2012, Susan Carlson, clerk of

13      the WA Supreme Court, refused to file pleadings plaintiff delivered to her in an appeal

14      describing perjury and the subornation of perjury concerning rulings that favored WA State

      Bar associate Scott Ellerby. The pleading was a reply brief.

15   163.  Circa 1-28-2014 re case #454351. Grievance filed circa 2014. David Ponzoha, Clerk of the

16      Court of Appeals II refused to file an opening brief plaintiff delivered to him describing

17      perjury and the subornation of perjury concerning an appeal from a ruling awarding Scott

18 Ellerby attorney fees as a sanction of $120k, by Judge Hull, a successor judge who never sat

19 on the case at any time prior to this 'sanction.' ***Appendix 8*** "Opening Brief" is attached for

   the courts convenience.

20   164.  Then these two Clerks dismissed the respective appeal for not filing the briefs.  The Clerk's

21      reasons  dismissing  the  respective  appeals  were  complete  fabrications  and  noted  as

22      fabrications in motions to 'Amend the Clerks rulings' – NONE of the Motions to amend

23      were accepted by a reviewing panel of judges who are all Bar participants.

24 [Dkt. #58 at 32-33]

1    Scheidler claims that Carlson rejected his filing because he refused to pay the filing fee:

2    c)  With respect to Carlson's unlawful demand that Scheidler pay a filing fee for an appeal…

3        The ONLY party Carlson could properly demand pay a fee is the "local governmental
         entity" and NOT Scheidler.  Therefore the Supreme Court does not have "personal

4        jurisdiction" of Scheidler with respect to this "fee" as he isn't the party statutorily

5        required to pay the fee Carlson demanded. Again preclusion theories are inapplicable as

6        personal jurisdiction is lacking. [Subject matter jurisdiction is also questioned below]

7    [Dkt. #108 at 4].

8         Scheidler claims that Ponzoha rejected his *Ellerby*[13] Brief because he (falsely) claimed it

9    did not conform[14] to the Rules of Appellate Procedure.  [*See* Dkt. #108 at 6; Dkt. #58-8 (Brief);

10   Dkt. #102 Ex. 3 (Ponzoha's letter).]

11        The Court Defendants argue persuasively that Scheidler's claims are "an unshielded

12   attempt at a *de facto* appeal of his State Court cases."  [Dkt. #100 at 9]  They argue that such an

13   effort is flatly prohibited:

14       The *Rooker-Feldman* doctrine precludes "cases brought by state-court losers
         complaining of injuries caused by state-court judgments . . . and inviting district
15       court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic
         Indus. Corp.,* 544 U.S. 280, 284, 125 S. Ct. 1517, 1521, 161 L. Ed. 2d 454 (2005).

16
         [W]hen a losing plaintiff in state court brings a suit in federal district court
17       asserting as legal wrongs the allegedly erroneous legal rulings of the state court
         and seeks to vacate or set aside the judgment of that court, the federal suit is a
18       forbidden de facto appeal. *Noel v. Hall*, 341 F.3d 1148, 1156 (9th Cir.2003);
         *Carmona v. Carmona*, 603 F.3d 1041, 1050 (9th Cir. 2008); *see e.g. Giampa v.
19       Duckworth*, 586 F. App'x 284 (9th Cir. 2014) (Affirming dismissal of claims

20
         _____

21       [13] The Court of Appeals affirmed the dismissal of Scheidler's claims against Ellerby in
         July 2012.  It reversed the attorneys' fee award, and remanded for a revised award.  On remand,
22       Scheidler sought additional relief, which was denied, and he appealed again.  Scheidler's claims
         against Ponzoha relate to this second *Ellerby* appeal.

23       [14] A review of Scheidler's proposed brief makes it clear that at least three of the five cited
         deficiencies existed.  Scheidler did not file an amended brief, was sanctioned, and failed to pay
24       the sanction. Scheidler's second appeal was dismissed.  [*See* Dkt. #102 and Exhibits thereto].

against judges, court clerks, state agencies, and prosecutors; claim against clerks for refusing to accept filings was improper collateral challenge to state court orders under *Rooker-Feldman*).

[Dkt. # 100 at 9-10].  Scheidler argues that he is not seeking to *re*-litigate anything (and is instead suing these wrong-doers for the first time), and that *Rooker-Feldman* is no longer the rule after *Saudi Basic*.  As to the latter, he is legally wrong.  No authority permits this court to review and reverse state appellate court decisions.

And as to the former argument, Scheidler is factually wrong.  He *does* claim that because Ponzoha breached various duties, the prior state court adjudication of his second *Ellerby* appeal is "void"—he seeks to undo it:

### f) Fraud upon the Court removes Rooker-Feldman and res judicata preclusions.

The MOMENT David Ponzoha violated the law affecting the outcome of Scheidler's lawsuit by dismissing Scheidler's appeal without addressing the issues raised by Scheidler, Ponzoha committed a 'fraud upon the court'.  The MOMENT David Ponzoha committed a fraud upon the court he violated Scheidler's right to a fair and impartial forum and the entire case is VOID for fraud and Ponzoha's conduct becomes a matter for trial.

[Dkt. #108 at 12]  *See also* Scheidler's state court "Motion to Modify," similarly accusing Ponzoha of corruption, fraud and dishonesty, and seeking the same relief: "vacation" of the prior dismissal as a "fraud on the court."  [Dkt. # 108-1, Ex. 3 at 9-15]

*Rooker Feldman* bars Scheidler's effort to obtain relief from or to overturn the prior adjudications.  There are no conceivable additional or different facts that he could plead to make this claim plausible.

Scheidler's second set of claims—seeking millions in damages against the Court Defendants personally under §1983, RICO, the Sherman Act and other statutes—is also irrevocably flawed.  The Clerks are entitled to quasi-judicial immunity from all such claims.

1   *Mireles v. Waco*, 502 U.S. 9 (1991); *Ashelman v. Pope*, 793 F.2d 1072, 1074 (9ᵗʰ Cir. 1986);

2   *Giampa, supra,* (clerk has quasi-judicial immunity).

3         To the extent Scheidler seeks retrospective relief for the conduct he alleges—money

4   damages and other punishment as redress for past wrongs—the Clerks are also entitled to

5   Eleventh Amendment immunity.  *See Puerto Rico Aqueduct and Sewer Auth. V. Metcalf & Eddy,*

6   *Inc.*, 506 U.S. 139, 146 (1993) (*Ex Parte Young* exception to Eleventh Amendment immunity is

7   narrow and applies only to purely prospective relief; does not permit judgments against state

8   officers declaring that the violated federal law in the past.)  *See also Ex Parte Young*, 209 U.S.

9   123 (1908), and cases cited and discussed in Defendants' Motion. [Dkt. #100 at 12-15]

10        Despite his current claims to the contrary, it is clear that the relief Scheidler seeks from

11  these defendants is retrospective.  *See* Dkt. #58 at 54-60.  He does seek "injunctive relief," but

12  the injunction he seeks is not *general*; he seeks an injunction to prevent recognition (or

13  enforcement) of prior orders adverse to *him*.  [*See* Dkt. #s 58, 108]  Simply labeling the relief he

14  seeks "prospective" does not defeat immunity.

15        Scheidler's claims against the Court Defendants seek to overturn (or preclude

16  enforcement of) past court decisions adverse to him, or to hold the decision-makers personally

17  liable for ruling against him.  Such relief is not available as a matter of law, and there are no

18  conceivable additional facts or claims that he could plead that would change that conclusion.

19        The State Court Defendants' Motion to Dismiss [Dkt. #100] is GRANTED and all of

20  Scheidler's claims against them are DISMISSED WITH PREJUDICE and WITHOUT LEAVE

21  TO AMEND.

22

23

24

1

**F.  Scheidler has not stated (and cannot plausibly state) a claim against the BoTA Defendants.**

2

3        Scheidler's second amended complaint reiterates his claims against Kay Slonum (the

Board of Tax Appeals Chair), and it also asserts all of his new claims against her.  But he adds

4

no material factual support for his claims.  Scheidler also adds the BoTA as a defendant, though

5

it is not clear that he seeks more from it than a reversal of its property tax exemption decision.

6

BoTA does not read Scheidler's second amended complaint as asserting a RICO claim against it.

7        Other than the fact they are "defendants"—Scheidler broadly accuses "the defendants" of

8

§1983, RICO, Sherman Act, ADA and numerous criminal violations—his second amended

9

complaint [Dkt. #58] and his Response to the Motion [Dkt #89] contain very little in the way of

10

factual allegations against BoTA or Slonum.

11        The BoTA Defendants seek dismissal of all Scheidler's claims against them.  They argue

12

that his allegations of criminal violations have already been dismissed, and repeating or revising

13

them does not change the fact that none of the cited criminal statues give rise to a civil tort claim.

14

This is correct; Scheidler cannot prosecute the alleged crimes as a private person.

15        The BOTA Defendants also argue that the civil claims against them—§1983, RICO,

16

Sherman Act, ADA —have no factual support.  This too is correct.  Scheidler does not actually

17

allege that BoTA did anything other than have Slonum as its chair. And it alleges only that

18

Slonum decided against him[15], that she "supported" Avery and she is a RICO defendant in "an

19

association-in fact with the Bar Defendants and Avery." [Dkt. #58 at 3]

20

21  _____

22        [15] Scheidler repeatedly claims that Slonum "dismissed his appeal for lack of jurisdiction," [*See*, *e.g.*, Dkt. # 1-2 at 7] but that is demonstrably untrue.  She considered and denied the appeal

23  *on the merits* because Scheidler's reading of the statute and the Assessor's form was wrong.  She did not consider his "*other*" causes of action because the BoTA lacked of jurisdiction over them.

24  [Dkt. #1-2 at 52-55]

1    Scheidler has failed to articulate any plausible connection between these defendants and

2    any of his claims for relief.  Instead, they claim, Scheidler's complaint is akin to the one

3    dismissed in *McHenry v. Renne*, 84 F.3d 1172, 1179 (9th Cir. 1996):  It contains nothing more

4    than "narrative ramblings and political griping." They accurately cite *McHenry* for the

5    proposition that "prolix, confusing complaints such as the ones plaintiffs filed in this case impose

6    unfair burdens on litigants and judges." *Id*.

7    Scheidler's Response does not address these arguments, and the Court agrees that the

8    claims are without merit. Scheidler's efforts to hold Slonum personally liable for her alleged

9    failure to properly handle his BOE appeal to the BoTA were, and are, without merit.  And there

10   are no conceivable additional or different facts (or claims) that Scheidler could assert against the

11   BoTA defendants that would change this conclusion.

12   The BoTA Defendants' Motion to Dismiss [Dkt. # 76] is GRANTED, and Scheidler's

13   claims against them are DISMISSED WITH PREJUDICE and WITHOUT LEAVE TO

14   AMEND.

15   **G.  Scheidler's motion to amend his complaint a fourth (or fifth) time is denied.**

16   Scheidler seeks leave to amend his complaint to incorporate an expanded RICO statement

17   [Dkt. #68].  In response to the defendants' motions to dismiss, he seeks an additional opportunity

18   to amend.  [Dkt.#s 89 and 108]  He has already filed three complaints and a fourth proposed

19   amended complaint, in this case. [Dkt. #s 1-2, 1-3, 58, and 68]

20   Leave to amend a complaint under Rule 15(a) "shall be freely given when justice so

21   requires." *Carvalho v. Equifax Info. Services, LLC*, 629 F.3d 876, 892 (9th Cir. 2010) (citing

22   *Forman v. Davis*, 371 U.S. 178, 182 (1962)).  This policy is "to be applied with extreme

23   liberality." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003)

24   (citations omitted).  In determining whether to grant leave under Rule 15, courts consider five

1   factors: "**bad faith**, undue **delay**, **prejudice** to the opposing party, **futility** of amendment, and

2   whether the plaintiff has **previously amended** the complaint." *United States v. Corinthian*

3   *Colleges*, 655 F.3d 984, 995 (9th Cir. 2011) (emphasis added).  Among these factors, prejudice

4   to the opposing party carries the greatest weight. *Eminence Capital,* 316 F.3d at 1052.

5          A proposed amendment is futile "if no set of facts can be proved under the amendment to

6   the pleadings that would constitute a valid and sufficient claim or defense." *Gaskill v. Travelers*

7   *Ins. Co.*, No. 11-cv-05847-RJB, 2012 WL 1605221, at *2 (W.D. Wash. May 8, 2012) (citing

8   *Sweaney v. Ada County, Idaho*, 119 F.3d 1385, 1393 (9th Cir.1997)).

9          Scheidler's motions for leave to amend fail under each of these considerations.

10         Scheidler's proposed amended RICO statement is a 129-page narrative wholly unrelated

11  to the property tax exemption appeal, or to the conduct of any of the original defendants.  It

12  appears instead to be a long list of lawyers who faced (or who Scheidler claims should have

13  faced) disciplinary proceedings in this state.  These disciplinary proceedings facially have

14  nothing to do with Scheidler, the named defendants, or this case.  Indeed, many of the allegations

15  appear to be copied from some other document or pleading, filed on behalf of some other party

16  in some other proceeding.

17         The proposed amendment would not cure the deficiencies discussed above, and it is futile

18  as a matter of law.  Scheidler's attempts to re-litigate completed disciplinary proceedings to

19  which he is not a party face at least the following insurmountable hurdles: Scheidler has no

20  standing to pursue claims against or on behalf of these non-parties.  He has no ability as a non-

21  attorney *pro se* litigant to represent these entities, and even if he were an attorney, there is no

22  evidence any of these attorneys consented to his representation.   Scheidler cannot prosecute

23  alleged criminal violations as a private citizen.  Only the U.S. Attorney can initiate criminal

24

proceedings in federal court.  *See Keenan v. McGrath,* 328 F.2d 610, 611 (1st Cir.1964).  Private parties cannot pursue charges for violations of criminal provisions; only prosecutors can. *Fritcher v. USDA Forest Serv.*, No. 1:12-CV-02033-LJO, 2013 WL 593688, at *3 (E.D. Cal. Feb. 14, 2013).

Scheidler's attempts to re-litigate prior adjudications are also barred by *res judicata* or collateral estoppel.  And despite what appears to be a conscious effort to not date the events, it is clear that most of them occurred many years ago, and are time-barred in any event:

J.  Grant Anderson sought and received the aid of the enterprise who failed to prosecute him for unethical activities involving a client's trust account.

K.  Bobbe Bridges enlisted the aid of the enterprise in avoiding drunk driving charges being brought against her as a bar violation

L.  Christine Grey, headed the prosecution of Douglas Schafer, covering for Grant Anderson, made a retaliatory prosecution of Jeffery Poole, who was eventually disbarred Linda Eide, headed the prosecution of Grunstein, proceeded to charge and convict without jurisdiction, destroyed evidence.

18.  It is a custom and practice for WSBA to retaliate against individuals who expose government corruption. See this RICO Statement re the Bar's  retaliation against Anne Block and her law license for exposing the city of Gold Bar's Director of Emergency Services, John Pennington, who is likely responsible, at least in part, for the 43 deaths from a landslide in Oso, WA. See RICO statement concerning retaliation against Schaffer for exposing corrupt judge. See RICO statement concerning John Scannell for exposing bar violations by AG for blowing $17 million on Beckman case.

[Dkt. #68 at 6, 16]

This court does not have jurisdiction to review state court proceedings under *Rooker-Feldman*.  A district court must give full faith and credit to state court judgments, even if the

1   state court erred by refusing to consider a party's federal claims.  *See Exxon Mobil Corp. v.*

2   *Saudi Basic Industries Corp.*, 544 U.S. 280, 293 (2005).

3          Scheidler's second amended complaint and his proposed third amended complaint do not

4   articulate any claim (no matter how liberally construed) that any defendant could fairly be

5   expected to reasonably answer.  It is therefore prejudicial to them.  It would be prejudicial to

6   make any party re-litigate the details of every disciplinary proceeding that Scheidler claims

7   should have been resolved differently.   None of the defendants can, or should be required to,

8   address Scheidler's wide-ranging, wild conspiracy allegations on behalf of, or against, non-

9   parties.

10          Furthermore, the Court cannot conclude that Scheidler is litigating in good faith.  A plain-

11   vanilla 1998 property tax dispute has exploded into a RICO conspiracy involving every lawyer

12   and judge in the state.  Scheidler does not appear to believe in reasonable disagreements; if

13   someone decides against him, or advocates against him on behalf of her client, she is corrupt and

14   criminal, and promptly sued.  He has no reasonable expectation of a billion dollar judgment, but

15   he must realize that responding to hundreds of pages of accusations costs time and money—his

16   lawsuits are, themselves, a form of punishment for those he repeatedly sues.

17          Finally, Scheidler has had ample opportunity to state a viable, plausible claim, and has

18   repeatedly failed to do so.  He has filed three complaints so far in this case, and he has filed at

19   least as many cases in other courts against the same parties, for the same conduct, over the years.

20   Scheidler's proposed amendments do not address the many fatal flaws in his claims, and a ***fifth***

21   opportunity to amend in this case would be prejudicial, and futile.  It is not warranted as a matter

22   of law.  Scheidler's Motion to Amend [Dkt. #68] is DENIED, and his general request for leave to

23   amend *again* (contained in his responses [Dkt. #s 89 and 108]) is DENIED.

24

**H.  Scheidler's property tax appeal is denied, and the BoTA's determination is affirmed.**

The remaining, original issue is Scheidler's appeal of the BoTA's decision that Avery correctly determined that he is not entitled to a property tax exemption for 2007-2010, based on his "disposable income" for the preceding years.

Slonum argued in her first Motion to Dismiss [Dkt. #8]—which was granted [Dkt. #38], and affirmed [Dkt. #51]—that she was not a proper defendant for an appeal of an adverse property tax decision, and that an "APA (Chapter 34.05 RCW) claim" seeking damages from her (or Avery) personally, for real or perceived errors, was not a viable route to the property tax relief Scheidler sought.  Instead, as she pointed out, the statutory authority for judicial review of a BoTA decision is RCW 82.03.180.   These claims are correct, and Scheidler's claims on these bases are dismissed with prejudice above.

Scheidler second amended complaint repeats these claims, reiterates his claim for relief against the defendants personally under the APA, and does not mention RCW 82.03.180. Instead he argues that "the core" of his claim is that Avery committed fraud (and crimes) by forced him to sign his property tax exemption applications "under duress."  [Dkt. #58 at 27*; see also* Dkt. #15-12 (same).]  This claim is spurious.

Avery's current Motion to Dismiss seeks dismissal of the APA claim, calling it "nothing more than a tort claim or claim for declaratory relief labeled as an 'administrative appeal.'" [Dkt. #77 at 8]  This characterization is not unfair: Scheidler is seemingly incapable of separating his (potentially viable) claim for property tax relief from his (irrevocably flawed) claims that the decision-makers were not just legally wrong, but also dishonest, corrupt, criminals personally liable to him.

Nevertheless, Scheidler's "Ninth Cause of Action: Administrative Appeal Per 34.50" does seek an "award of his rightful property tax reduction."  [Dkt. #58 at 54]  The Court will

1    address the merits of the Scheidler's effort to overturn the denial of his property tax exemption

2    applications, based on the arguments and documents[16] in this case.

3         Retired or disabled Washington taxpayers with disposable incomes less than $35,000 are

4    entitled to a property tax exemption.  RCW 84.36.381; *see* Chapter 84.36 RCW.  The statute

5    describes how to determine "disposable income" in detail:

6         (5) "Disposable income" means *adjusted gross income* as defined in the federal
          internal revenue code[] *plus all of the following* items *to the extent* they are ***not***
7         ***included in*** or ***have been deducted from*** adjusted gross income:

8         (a) *Capital gains*, other than gain excluded from income under section 121
          of the federal internal revenue code to the extent it is reinvested in a new principal
9         residence;
          (b) *Amounts deducted for loss*;
10        (c) *Amounts deducted for depreciation*;
          (d) Pension and annuity receipts;
11        (e) Military pay and benefits other than attendant-care and medical-aid payments;
          (f) Veterans benefits, other than:
12             (i) Attendant-care payments;
               (ii) Medical-aid payments;
13             (iii) Disability compensation, as defined in Title 38, part 3, section 3.4 of
               the code of federal regulations, as of January 1, 2008; and
14             (iv) Dependency and indemnity compensation, as defined in Title 38, part
               3, section 3.5 of the code of federal regulations, as of January 1, 2008;
15        (g) Federal social security act and railroad retirement benefits;
          (h) Dividend receipts; and
16        (i) Interest received on state and municipal bonds.

17   RCW 84.36.383(5) (emphasis added).

18        A taxpayer's "disposable income" for purposes of the state property tax exemption is

19   therefore often *greater than* the "AGI" he calculated for purposes of paying federal income tax.

20   If the taxpayer was able to avoid including *capital gains* in his AGI, those gains are *added* to the

21

22   ───────────────

23        [16] These include (but are not limited to) Scheidler's original complaint, with attachments
     [Dkt. #1-2]; his Response to Avery's first Motion to Dismiss, with attachments [Dkt. #15]; his
     second amended complaint, with attachments [Dkt. #58]; and his Response to Avery's second
24   Motion to Dismiss [Dkt. #89].

ORDER - 27

AGI in calculating his disposable income.  Similarly, if the taxpayer was able to reduce his AGI calculation by deducting losses (or depreciation), those amounts are included—they are added back into—the state law disposable income calculation, used to determine his eligibility for a property tax exemption.  However, if the AGI already includes the capital gains (or if the losses were not used to reduce the AGI), then they are not added back for purposes of the disposable income calculation.

RCW 84.36.383(4) also permits a taxpayer to then subtract from his "disposable income" three specific categories of expenses often incurred by the retired or disabled:

> (a)      Drugs supplied by prescription of a medical practitioner authorized by the laws of this state or another jurisdiction to issue prescriptions;
>
> (b)      The treatment or care of either person received in the home or in a nursing home, assisted living facility, or adult family home; and
>
> (c)      Health care insurance premiums for medicare under Title XVIII of the social security act.

RCW 84.36.383(4).

In simple terms, a taxpayer's "disposable income" is: his AGI, *plus* certain kinds of "income" *not already included* in the AGI, *plus* certain deductions which *were included* in the AGI, *minus* a limited class of expenses.

The genesis for Scheidler's various lawsuits over the past two decades is his belief that the Kitsap County Assessor's form for determining disposable income (specifically, its instructions) is contrary to this statute.   Scheidler has prepared a side-by-side comparison that he claims demonstrates the error:

1

2

TABLE OF PERTINENT LANGUAGE illustrating the substantive difference between Exhibit 1 and controlling law.

| **EXHIBIT 1:  THE "APPLICATION"** Defendant **James Avery's version of the law,** Page 3, top paragraph of the application states this instruction: | **RCW 84.36.383(5)** The **Controlling law** that this "application/instruction" is purported to carryout states the opposite. |
|---|---|
| *"If you file a tax return  with the IRS and your return included any deductions for the following items or if any of these items were not included in your adjusted gross income,* they must be reported on your application for purposes of this exemption program: Capital gains (**cannot offset with losses**) … | RCW 84.36.383 (5) **"Disposable income" means adjusted gross income as defined in the federal internal revenue code,** as amended prior to January 1, 1989, or such subsequent date as the director may provide by rule consistent with the purpose of this section**, plus all of the following items to the extent they are not included in or have been deducted from adjusted gross income:** |

3

4

5

6

7

8

9

10

11

12   This difference between defendant James Avery's version of the law and the

13   "True" law results in an improper treatment of the items that follow the instruction.

14   **Defendant Avery says**, "the following amounts on your IRS return must be added to adjusted gross income."

15

16   **The Controlling law says**, "the following amounts on your IRS return must be included IF THEY HAVE NOT ALREADY BEEN INCLUDED in adjusted gross income.

17

18   Defendant Avery's instruction leaves out the "conditional analysis – if not already included" and in that way "DOUBLE COUNTS" those amounts that "have already been included."  This instruction by Avery "IMPROPERLY INCREASES" a persons presumed income – and income is a critical element in obtaining the class's "constitutional rights."

19

20

21   [Dkt. #15 at 9.  Scheidler includes an exemplar exemption application packet at Dkt. #15-1]

22

23

24

1    As an initial matter, Scheidler's claim that the instructions "leave out the conditional

2    analysis" is simply not correct.  The very first word of the disputed instructions is "**If**."   The

3    Kitsap County form correctly instructs that *if* certain income was excluded from the AGI

4    calculation, or *if* various deductions were included in it, *then* those amounts "must be reported on

5    your application for purposes of this exemption program."  [*See* Dkt. #15-1 at 4, mirroring the

6    list in RCW 84.36.383(5).]

7    Scheidler's second claim—that this statutory scheme "INCREASES a person's presumed

8    income"— is absolutely correct.  That is the point.  Eligibility for the state property tax

9    exemption is not based on the taxpayer's AGI; it is based on his "disposable income."  The

10   statutory scheme reflects a conscious policy decision to count as "disposable income" some

11   capital gains and other receipts that the IRS does not require the taxpayer to include in his AGI.

12   It similarly disallows deductions for losses or depreciation that the IRS does allow the taxpayer

13   to deduct from his AGI.  It specifically does not permit a property tax payer to offset capital

14   gains with other losses.

15   Scheidler's submissions include an undated and untitled document that he claims is

16   evidence that the Department of Revenue is "involved in the Assessor's fraud."  [Dkt. # 58-4]

17   The source of this document is unknown, but it appears to be a handout from a state Assessors'

18   "administrative workshop," intended to address the question raised by Scheidler here: "why can't

19   losses offset gains?":

20

21

22

23

24

1

2

During the Admin workshop in Moses Lake, Scott Furman, Okanogan County Assessor, requested some "language" that can be used when responding to those questions about why we cannot use losses to offset gains.   The language I normally use is actually a paraphrase from a BTA case - Docket #55692.  Other docket numbers for reference are #56336 and #55067.  Here's a sample:

3

4

5

The general rules pertaining to property tax exemptions require that the statutory language be construed strictly, though fairly.  Taxation is the rule and exemption is the exception.  The Legislature has set specific criteria for exempting property from property taxes because exemptions create a "shift" of the tax burden, causing other taxpayers in the taxing district to actually pay higher property taxes.

6

7

***

8

The State law governing property tax exemption is independent of the federal income tax statutes and the federal "adjusted gross income" figure is only the starting point for calculating "disposable income."

9

10

***

11

12

13

Although I am sympathetic to your situation and understand your thoughts on the matter, the laws and rules governing the Senior and Disabled Persons Exemption program are very clear.  In the calculation of income for this program, losses must be excluded, whether or not they can be used to offset taxable income for federal income tax purposes.  We cannot ask other taxpayers to subsidize the personal losses of someone else.

14

[Dkt. #58-4]  This analysis is not evidence of some fraud or conspiracy; it is additional evidence

15

that Scheidler's position is wrong.  It too is exactly consistent with the statutory scheme, and to

16

the extent it accurately reflects the Department of Revenue's position, the DOR is correct.

17

Scheidler's June 2010 letter to Avery suggests that even he realizes that his dispute is not

18

really with the Kitsap County Assessor's form, but with the 35-year-old state statute that

19

expressly makes the distinctions he complains about.   That letter acknowledges that the property

20

tax exemption is based on a measure of "income" that is different than the income upon which

21

the taxpayer must pay federal income tax:

22

23

24

- The County's instructions begin with AGI but then "excludes" amounts that went into calculating AGI. For example, AGI includes amounts deducted for loss. Yet the County "excludes" all losses without any rational and in opposition to the conditions explicitly expressed in .383(5), which states amounts deducted for loss must be included in AGI if those amounts have not yet been included. IRS AGI "includes" amounts deducted for loss.
- The county, by arbitrarily excluding losses that are included in the calculation of AGI, creates a structural error in the calculation of Disposable Income. This structural error artificially increases disposable income, which determines the amount of TAX, or the denial of the benefit.

[Dkt. #15-2 at 2]  The "rationale" for not permitting the taxpayer to use losses to offset gains for purposes of determining his "disposable income"—even though the IRS allows such an offset—is to avoid having other property tax payers subsidize those losses.  And it is the legislature's rationale, not Avery's.

This issue has been correctly determined by prior Kitsap County Assessor, Assessor Avery, the Board of Equalization, and the Washington State Board of Tax Appeals.  Kitsap County's property tax exemption form (like Pierce[17] County's and King County's) expressly and correctly does not permit a taxpayer to use losses to offset capital gains.  That is the law in this state.  RCW 84.36.383(5).

Scheidler's appeal of the Board of Tax Appeal's September 6, 2012 decision [Dkt. #1-2 at 54] is DENIED and that decision is AFFIRMED.

---

[17] Pierce and King County's property tax exemption application forms are available online, through these links:
    https://www.co.pierce.wa.us/index.aspx?nid=702
    http://www.kingcounty.gov/depts/assessor/Forms.aspx
    Like Kitsap's, each county's instructions specifically and consistently do not permit the applicant to offset income with losses in calculating his disposable income.

ORDER - 32

1

## CONCLUSION

2      All of Scheidler's claims against all defendants are baseless and they cannot be saved by

3 additional amendment.  They are DISMISSED with prejudice and without leave to amend.  The

4 BoTA's decision denying Scheidler's property tax exemption applications for 2007-2010 is

5 AFFIRMED.  Scheidler's BoTA appeal is DISMISSED with prejudice and without leave to

6 amend.  IT IS SO ORDERED.

7      Dated this 17th day of November

8

9

Ronald B. Leighton
10                                           United States District Judge

11

12

13

14

15

16

17

18

19

20

21

22

23

24

ORDER - 33